**Fill in this information to identify your case:**

Debtor 1  SUZANNE M. BLASI
         First Name    Middle Name    Last Name

Debtor 2  FRANK E. BLASI
(Spouse, if filing) First Name   Middle Name   Last Name

United States Bankruptcy Court for the: _____ District of Illinois
                                                       (State)

Case number  16-37856
(If known)

# Official Form 427
## Cover Sheet for Reaffirmation Agreement                                          12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**  CarMax Auto Finance
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed  $19,907.97
To be paid under the reaffirmation agreement  $19,910.40
$371.06 per month for 60 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed  4.45 %
Under the reaffirmation agreement  4.45 %   ☑ Fixed rate
                                             ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes. Describe the collateral.  2015 TOYOTA CAMRY
Current market value  $17,375.00

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

| | Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|---|
| 6a. | Combined monthly income from line 12 of Schedule I | $8976.76 | 6e. Monthly income from all sources after payroll deductions | $8976.76 |
| 6b. | Monthly expenses from line 22c of Schedule J | –$8026.33 | 6f. Monthly expenses | –$8026.33 |
| 6c. | Monthly payments on all reaffirmed debts not listed on Schedule J | –$0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | –$0 |
| 6d. | **Scheduled net monthly income** Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $950.43 | 6h. **Present net monthly income** Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $950.43 |

Official Form 427                       Cover Sheet for Reaffirmation Agreement                           270
                                                                                                        page 1

Debtor 1  SUZANNE M. BLASI  
First Name   Middle Name   Last Name

Case number (if known) 16-37856

| | | |
|---|---|---|
| 7. Are the income amounts on lines 6a and 6e different? | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 8. Are the expense amounts on lines 6b and 6f different? | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 9. Is the net monthly income in line 6h less than 0? | ☒ No<br>☐ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.<br>Complete line 10. |
| 10. Debtor's certification about lines 7-9<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>x _Suzanne M. Blasi_          x _Frank E. Blasi_<br>Signature of Debtor 1                Signature of Debtor 2 (Spouse Only in a Joint Case) | |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>  ☐ No<br>  ☒ Yes | |

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

x _Yuri McMutry_                    Date 12/29/16  
Signature                           MM/DD/YYYY

_Yuri McMutry - Creditor_  
Printed Name

Check one:  
☐ Debtor or Debtor's Attorney  
☒ (Creditor or Creditor's Attorney)

Official Form 427            Cover Sheet for Reaffirmation Agreement            page 2

☐ Presumption of Undue Hardship
☒ No Presumption of Undue Hardship

Form B240A (4/10)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF Illinois

In re SUZANNE M. BLASI and FRANK E. BLASI                    Case No. 16-37856

Debtor(s).                                                    Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** CarMax Auto Finance

☐ Check this box if creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important Disclosures, Instructions and Definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Retail Installment Contract for: 2015 TOYOTA CAMRY

B. *AMOUNT REAFFIRMED:* **$19,910.40**

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include principal, interest, and fees and costs (if any) arising on or before 12/06/16, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 4.45%.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*
   This is a (check one)   ☒ Fixed Rate     ☐ Variable Rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

**Form B240A – Reaffirmation Documents**  Page 2

D. Reaffirmation Agreement Repayment Terms (check and complete one):

[x] $371.06 per month for 60 months starting on 01/12/17.

[ ] Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount:_____

E. Describe the collateral, if any, securing the debt:

Description: 2015 TOYOTA CAMRY

Current Market Value: $17,375.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

[x] Yes   What was the purchase price for the collateral?   $19,891.00
[ ] No    What was the amount of the original loan?   $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due (including (fees and costs) | $19,910.40 | $19,910.40 |
| Annual Percentage Rate | 4.45% | 4.45% |
| Monthly Payment | $371.06 | $371.06 |

H. [ ] Check this box is the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

# PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.  [x] Yes   [ ] No

2. Is the creditor a credit union?

Check one.  [ ] Yes   [x] No

B.     If your answer to EITHER question 1, or 2, above is "No" complete 1. and 2. below.

      1.    Your present monthly income and expenses are:

          a.    Monthly income from all sources after payroll deductions
(take-home pay plus any other income)     $ 8976.76

          b.    Monthly expenses (including all reaffirmed debts
except this one)     $ 7655.27

          c.    Amount available to pay this reaffirmed debt
(subtract b. from a.)     $ 1321.49

          d.    Amount of monthly payment required for this reaffirmed debt     $ 371.06

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (lineci.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the tope of page one that says "No Presumption of Undue Hardship."*

      2.    You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

        Check one of the two statements below, if applicable:
        ☑ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

        ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you am reaffirming, including this one because:

_____
_____
_____
_____.

        Use an additional page if needed for a full explanation.

C.     If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

        ☐ You believe this reaffirmation agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

**Form B240A – Reaffirmation Documents** Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above;

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this Reaffirmation Agreement voluntarily and fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (if this is a joint Reaffirmation Agreement, both debtors must sign):

Date: 12/15/16            Signature: _Suzanne M. Blasi_
                                    Debtor

Date: 12/15/16            Signature: _Frank E. Blasi_
                                    Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor: CarMax Auto Finance            225 Chastain Meadows Court
         Print Name                      Kennesaw, GA 30144
                                         Address

Yuri Mcmutry                             _Yuri Mcmutry_   12/06/16
Print Name of Representative             Signature          Date

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: 1) this agreement represents a fully informed and voluntary agreement by the debtor; 2) this reaffirmation agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and 3) 1 have fully advised the debtor of the legal effect and consequences of this reaffirmation agreement and any default under this reaffirmation agreement.

☐ A presumption of undue hardship has been established with respect to this reaffirmation agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box if the presumption of undue hardship is checked on page 1 and the creditor is not a Credit Union.*

Date: _____        Signature of Debtor's Attorney: _____

Print Name of Debtor's Attorney  Robert W. Honig

**Form B240A – Reaffirmation Documents**                                                                 **Page 6**

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I) and these additional important disclosures and instructions.

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, detailed in the Instructions provided in Part V, Section B. below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm the debt?** A reaffirmed debt remains your personal legal obligation. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

Case 16-37856  Doc 23  Filed 01/18/17  Entered 01/18/17 16:09:37  Desc Main
Document  Page 9 of 16
Form B240A – Reaffirmation Documents

Page 7

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you WERE represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you WERE NOT represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your reaffirmation agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the Reaffirmation Agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this reaffirmation agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider the decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the reaffirmation agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification by Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you were not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion For Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.*
You can use Form B240B to do this.

## C.   DEFINITIONS

1. "AMOUNT REAFFIRMED" means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part 1, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. "ANNUAL PERCENTAGE RATE" means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. "CREDIT UNION" means a financial institution as defined in 12 U.S.C. §. 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

Form B240A (4/10)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF    Illinois

In re SUZANNE M. BLASI and FRANK E. BLASI

Debtor(s).

Case No. 16-37856

Chapter 7

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because (provide any additional relevant reasons the court should consider):

_____
_____
_____
_____
_____

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions(*check all applicable boxes*):

☐ 11 U.S.C. §524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. §524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

Signed: *Suzanne M Blasi*
(Debtor)

*Frank E. Blasi*
(Joint Debtor, if any)

Date: 12/15/16

Form B240A (4/10)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF  Illinois

In re  SUZANNE M. BLASI  and FRANK E. BLASI

Debtor(s).

Case No.  16-37856

Chapter  7

### ORDER ON REAFFIRMATION AGREEMENT

The debtor(s) SUZANNE M. BLASI  and FRANK E. BLASI  has (have) filed a motion for approval
of the reaffirmation agreement dated 12/06/16 made between the debtor(s) and
creditor CarMax Auto Finance. The court held the hearing required by 11
U.S.C. § 524(d) on notice to the debtor(s) and the creditor on _____.

COURT ORDER:

☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best interest of the debtor(s).

☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court disapproves the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court does not approve the reaffirmation agreement.

BY THE COURT

Date: _____

_____
*United States Bankruptcy Judge*

# CARMAX®

## RETAIL INSTALLMENT CONTRACT

**Consumer Credit Sale**

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

**Contract Number** _____
**Contract Date** Nov 28, 2016

| | | | |
|---|---|---|---|
| Seller | CARMAX - NAPERVILLE | 3320 ODYSSEY CT., NAPERVILLE, IL | 60563 |
| | Name | Address | Zip Code |
| Buyer | SUZANNE M BLASI | 2015 JEFFERY LN, ELGIN, IL | 60123 |
| | Name | Address | Zip Code |
| Co-Buyer | FRANK E BLASI | 2015 JEFFREY LN, ELGIN, IL | 60123 |
| | Name | Address | Zip Code |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 0.00. |
|---|---|---|---|---|
| 4.45 % | $ 2,372.60 e* | $ 19,891.00 | $ 22,263.60 e* | $ 22,263.60 e* |

Your Payment Schedule will be:     *e means an estimate

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 60 | $ 371.06 | Monthly, beginning Jan 12, 2017 |

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge that is 5% of the unpaid installment for an installment exceeding $200 or $10 for an installment of $200 or less.

**Prepayment.** If you pay off the full amount owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____ N/A _____ (in months)

I want the optional GAP contract.
Buyer Signs: _____

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model 2015/TOYOTA/CAMRY
VIN 4T1BF1FK2FU086396
New _____ Used X

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household   X
Business or Commercial _____ Agricultural _____

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":

Year/Make/Model N/A
VIN N/A

Year/Make/Model N/A
VIN N/A

DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

| ITEMIZATION OF AMOUNT FINANCED | | |
|---|---|---|
| **A. CASH PRICE** | | |
| 1. Cash Price of Vehicle | $ | 16,998.00 |
| 2. Cash Price of CarMax Accessories | $ | 0.00 |
| 3. Documentary Fee | $ | 169.00 |
| 4. Sales / Excise Tax | $ | 1,204.00 |
| 5. Optional ERT Fee* | $ | 25.00 |
| 6. Other: N/A | $ | 0.00 |
| 7. **Total Cash Price** [1 through 6] | $ | 18,396.00 |
| **B. DOWNPAYMENT** | | |
| 1. Cash Downpayment | $ | 0.00 |
| 2. Manufacturer's Rebate | $ | 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | | |
| a. Value of "Trade-In" | $ | 0.00 |
| b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
| c. Pay-Off of "Trade-In" | $ | 0.00 |
| d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | $ | 0.00 |
| 4. Other: N/A | $ | 0.00 |
| 5. **Total Downpayment** [1 through 4] | $ | 0.00 |
| **C. UNPAID BALANCE OF CASH PRICE** [A minus B] | $ | 18,396.00 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | | |
| 1. Optional GAP Waiver Agreement | $ | 0.00 |
| 2. To Public Officials | | |
| a. IL Title Fee | $ | 95.00 |
| b. N/A | $ | 0.00 |
| c. IL Plate Fee | $ | 101.00 |
| d. N/A | $ | 0.00 |
| e. N/A | $ | 0.00 |
| f. N/A | $ | 0.00 |
| 3. To CNA National Warranty Corporation * for Optional Extended Service Contract | $ | 1,299.00 |
| 4. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 0.00 |
| 5. **Total of Other Charges and Amounts Paid to Others on Your Behalf** [1 through 4] | $ | 1,495.00 |
| **E. AMOUNT FINANCED** [C plus D] | $ | 19,891.00 |

*Seller may retain a portion of this amount.

---

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials _SB_     Co-Buyer's Initials _FB_

Business ID RIC9013
Order # 1311475
Revision Date 1/14

carmax.com

MIS ID 7122000
Legal - GF

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

**Your Promise to Pay.** You agree to pay us the Amount Financed and Finance Charge provided for on Page 1 of this Contract according to the Payment Schedule, also shown on Page 1 of this Contract. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate shown on page 1 of this Contract on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown on Page 1 of this Contract are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** If you make a payment to us by check or other draft that is not honored by your financial institution because of insufficient funds or credit, or the lack of an account, you will pay a charge that is the greater of $25 or all costs and expenses, including reasonable attorney's fees, incurred in connection with collecting the dishonored payment.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** Unless you provide us with evidence of the insurance coverage required by your Contract with us, we may purchase insurance at your expense to protect our interests in your Vehicle. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Vehicle. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our Contract. If we purchase insurance for the Vehicle, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** If we refer this Contract for collection or enforcement to an attorney, you agree to pay the reasonable attorney's fees, plus court costs, that we incur.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

**Applicable Law.** Federal law and the law of the State of Illinois apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _____   Co-Buyer's Initials _____

**RETAIL INSTALLMENT CONTRACT**
Other Important Agreements

DMS Tracking #: 3528712                     Reprint #: 0

## ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
- **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _JB_                          Co-Buyer's Initials _AN_

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

| **NO LIABILITY INSURANCE INCLUDED** |
|---|
| LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT. |

**PROPERTY INSURANCE:** YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.

YOUR INSURANCE INFORMATION

LIENHOLDER/LOSS-PAYEE __CarMax Business Services, LLC__    INSURED'S NAME __SUZANNE M BLASI__

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ __500.00__    COLLISION $ __500.00__

INSURANCE COMPANY __FARMERS INSURANCE__

POLICY NUMBER __    EFFECTIVE DATE __10/03/2016__    EXPIRATION DATE __04/03/2017__

INSURANCE AGENT NAME __GIACALONE__    TELEPHONE NUMBER __(847) 783-0954__

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

**USED CAR BUYERS GUIDE.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**SPANISH TRANSLATION:** GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**VEHICLE RETURN POLICY**

You may return the Vehicle to CarMax for a refund within 5 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

**ENTIRE AGREEMENT**

This Contract contains the entire agreement between you and us relating to this Contract. If the law allows, we may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**NOTICE TO CARMAX AUTO FINANCE CUSTOMERS ONLY.** The retail buyer hereunder has been informed by the retail seller that his Contract will be sold and assigned by the retail seller to, CarMax Business Services, LLC d/b/a CarMax Auto Finance (a licensed Sales Finance Agency) and that the said Sales Finance Agency has a substantial interest in the business of the retail seller and that pursuant to law the retail buyer may assert all defenses equally against the retail seller and said CarMax Auto Finance, Sales Finance Agency.

**Notice to the Buyer.**

1. Do not sign this Contract before you read it or if it contains any blank spaces.
2. You are entitled to an exact copy of the Contract you sign.
3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.

**RETAIL INSTALLMENT CONTRACT**

Seller __CarMax Auto Superstores, Inc.__    Buyer's Signature _Suzanne M Blasi_

By __[signature]__    Co-Buyer's Signature** __Frank E. Blasi__

**A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the Vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the Vehicle's title. By signing above, the Co-Buyer confirms that the Co-Buyer will actually receive possession of the Vehicle or will use it, or that the Co-Buyer is a parent or spouse of the Buyer, or will be listed as an owner on the Vehicle's title.

**ASSIGNMENT**

Seller hereby sells, assigns and transfers to __CarMax Business Services, LLC__ (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor __[signature]__

Date __Nov 28, 2016__    Title __BOA__